USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-19-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
WSP USA CORP.,

                Plaintiff,

      -against-

JOHN MARINELLO,

                Defendant.
-----------------------------------------------------------x

13 Civ. 4591 (PKC)

MEMORANDUM
AND ORDER

CASTEL, District Judge:

        Plaintiff WSP USA Corp. ("WSP") brings claims for relief against John Marinello, its former director of information technology. Among other alleged misconduct, it asserts that, upon Marinello's voluntary departure from WSP, he appropriated and retained confidential company information in violation of the parties' Separation Agreement and General Release executed by the parties (the "Agreement"), shared that information with his new employer, and personally retained valuable electronics equipment that belongs to WSP. Marinello moves to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., arguing that a general release provision in the Agreement bars WSP's claims in their entirety. (Docket # 9.)

        The Agreement's release provision includes broad language that governs known and unknown claims that were in existence at the time of the Agreement's execution. Because WSP's claims for breach of contract, misappropriation of trade secrets and conversion did not arise until after the Agreement's execution, they are not barred by the release, and the motion to dismiss these claims is denied. The motion to dismiss is granted as to WSP's defamation claim and its accounting claim.

BACKGROUND.

In reviewing the Complaint, the Court accepts all non-conclusory factual allegations as true, and draws every reasonable inference in favor of the plaintiff as the non-movant. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam). The Agreement, including the release provision, is annexed to the Complaint at Exhibit A, and is properly considered on a motion to dismiss. See, e.g., In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013).

Plaintiff WSP is a New York corporation with its principal place of business in New York. (Compl't ¶ 1.) Defendant Marinello is a citizen of New Jersey. (Compl't ¶ 2.) Subject matter jurisdiction is premised upon complete diversity of citizenship, 28 U.S.C. §1332(a). (Compl't ¶ 3.)

WSP is an engineering consulting firm. (Compl't ¶ 5.) In July 2012, an engineering firm named Genivar acquired WSP's parent company, with the combined entity rebranded as WSP+Genivar. (Compl't ¶¶ 13-14.) Defendant Marinello began employment with WSP in 2001. (Compl't ¶ 7.) He continued to work in the company's New York office through January 2013, at which point he had the job title of Information Technology Director, and was responsible for overseeing IT functions for the company's U.S. businesses. (Compl't ¶¶ 5-9.)

The Complaint alleges, upon information and belief, that in or about October 2013, Marinello began employment negotiations with a direct competitor of WSP, Syska Hennesy. (Compl't ¶ 15.) WSP alleges, upon information and belief, that on or about November 29, 2012, defendant Marinello accepted an offer of employment from Syska Hennessy, and signed a letter of employment that provided a start date of January 31, 2013.

(Compl't ¶ 16.) At the time, WSP was unaware that defendant had accepted this position or was seeking employment elsewhere. (Compl't ¶ 17.) Defendant Marinello did not give notice to WSP at the time he accepted the offer from Syska Hennessy.

On January 23, 2013, WSP announced that it would delay payment of employee bonuses to some point beyond the planned payment date in February 2013. (Compl't ¶ 19.) On or about January 25, defendant asked when he should expect to receive his annual bonus, stating that he was closing on a new house and needed the money. (Compl't ¶ 20.) WSP's chief financial officer stated that he would not be able to give a date certain until the following week. (Compl't ¶ 20.) On or about January 30, 2013, defendant gave notice to WSP, stating that his last day of work would be February 19, and that he expected to receive a full annual bonus. (Compl't ¶ 21.)

WSP initially refused to pay defendant's bonus, stating that it was under no obligation to do so. (Compl't ¶ 22.) It then decided "to pay most of defendant's expected bonus" after receiving a letter from his attorney. (Compl't ¶¶ 23-25.) On February 28, 2013, the parties executed a Separation Agreement and General Release (the "Agreement"), which, among other things, provided a payment of $26,500 to the defendant. (Compl't ¶¶ 26-27.)

Two of the Agreement's provisions are particularly relevant to this motion. The first governs defendant's obligations concerning confidential WSP information, and is the basis for plaintiff's breach of contract claim:

> **Protection of Confidential Information.** Employee will not directly or indirectly (without the Company's prior written consent), use for himself or use for, or disclose to, any party other than the Company, any Confidential Information. Such Confidential Information is, and will remain, the Company's exclusive property from its conception or acquisition. To the extent the Employee is in possession of any of said items, Employee shall promptly deliver to the Company all memoranda,

> notes, records, plans, designs, blueprints, flow charts, customer list, and other information, data, video or audio recordings or other documents made or compiled by, delivered to, or otherwise acquired by Employee concerning, evidencing representing, or otherwise relating to said Confidential Information.

(Agreement ¶ 3.) The Agreement defines confidential information to include "any data or information regarding the business of the Company that is not generally known to the public which has economic value, and which the company keeps confidential . . . ." (Agreement ¶ 4.)

Separately, the Agreement includes parallel general release provisions for both WSP and defendant Marinello. (Agreement ¶ 6.) The language releasing claims by WSP contains broad language that releases "known and unknown claims . . . which the Company has or may have against Employee as of the date of execution of the Agreement and General Release." (Agreement ¶ 6.) It states in full:

> **General Release of All Claims by Company.** Company hereby knowingly and voluntarily releases and forever discharges the Employee, his successors, and assigns, from any and all claims, known and unknown, asserted or unasserted, which the Company has or may have against Employee as of the date of execution of this Agreement and General Release.

(Agreement ¶ 6.) Defendant Marinello argues that this release bars WSP's claims in their entirety.

WSP asserts that on or about May 1, 2013, two months after the Agreement's execution, it discovered that defendant Marinello had opened a Twitter account using the "WSP+Genivar" name, and that he was posting "libelous and disparaging" statements about the company. (Compl't ¶ 31.) Among other things, the Twitter account stated that WSP prioritized shareholders above its clients and work quality, "profit[ed] from others misfortunes" and that employees were underpaid and worked in "unsanitary conditions." (Compl't ¶ 31.) At WSP's request, Twitter closed this account. (Compl't ¶ 33.)

WSP then "performed a full forensic audit of defendant's activities during his employment . . . ." (Compl't ¶ 34.) The Complaint sets forth several instances of alleged misconduct, including defendant's failure to return company electronics (including two laptops, an iPad and three phones) assigned to him during his employment, extensive personal use of the company FedEx account, failure to reimburse the company for personal expenditures, accessing confidential and proprietary information for personal use, and the impermissible monitoring of executive e-mails that discussed his annual bonus. (Compl't ¶ 34.) WSP claims that defendant has ignored requests to return the allegedly misappropriated items. (Compl't ¶¶ 35-36.) The Complaint asserts claims for breach of contract, defamation, misappropriation of trade secrets and conversion, and seeks an accounting. (Compl't ¶¶ 37-54.)

RULE 12(b)(6) STANDARD.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "'detailed factual allegations'" are not necessary. Id. (quoting Twombly, 550 U.S. at 555).

Affirmative defenses, including the enforcement of a general release, are properly considered by a court as part of a motion to dismiss under Rule 12(b)(6). See, e.g., Staehr v. Hartford Fin. Services Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (Rule 12(b)(6) dismissal is appropriate when an affirmative defense "is clear from the face of the complaint" and other

materials properly considered in a motion to dismiss); Tromp v. City of New York, 465 Fed. Appx. 50, 51-52 (2d Cir. 2012) (affirming district court's Rule 12(b)(6) dismissal based on language in general release).

DISCUSSION

    I.    The Complaint Plausibly Alleges that Defendant Marinello Breached Paragraph Three of the Agreement, and that He Has Misappropriated Trade Secrets.

The Agreement provides that it "shall be construed according to the laws of the State of New York, without regard to its conflict of law rules." (Agreement ¶ 10.) Under New York law, "[a] release is a contract, and its construction is governed by contract law." Cardinal Holdings, Ltd. v. Indotronix Int'l Corp., 73 A.D.3d 960, 962 (2d Dep't 2010) (quotation marks omitted). "'[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.'" RKO Props. Ltd. v. Boymelgreen, 62 A.D.3d 683, 684 (2d Dep't 2009) (quoting Reiss v. Fin. Performance Corp., 97 N.Y.2d 195, 198 (2001)). "However, 'if from the recitals therein or otherwise, it appears that the release is to be limited to only particular claims, demands or obligations, the instrument will be operative as to those matters alone.'" Kaminsky v. Gamache, 298 A.D.2d 361, 361 (2d Dep't 2002) (quoting Perritano v. Town of Mamaroneck, 126 A.D.2d 623, 624 (2d Dep't 1987)).

A defendant has the initial burden of establishing that a release bars plaintiff's claims. Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V., 17 N.Y.3d 269, 276 (2011). The burden then shifts to the plaintiff "'to show that there has been fraud, duress or some other fact which will be sufficient to void the release.'" Id. (quoting Fleming v. Ponziani, 24 N.Y.2d 105, 111 (1969)). "Notably, a release may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is 'fairly and knowingly

made.'" Id. (quoting Mangini v. McClurg, 24 N.Y.2d 556-67 (1969)). Centro Empresarial concluded that the "broad language of the release," which barred "all manner of actions . . . whatsoever . . . whether past, present or future, actual or contingent," reflected an intention to release defendants from claims that were unknown at the time that the release was executed. Id. at 277.

Applying New York law, the express and unambiguous language of the Agreement establishes that WSP has released "any and all claims, known and unknown, asserted or unasserted" that WSP had or may have had as of the February 28, 2013 execution of the Agreement. (Agreement ¶ 6.) The release language bars WSP from bringing claims that were in existence on February 28, 2013, but that WSP had not yet discovered. WSP may therefore pursue only claims that arose after February 28.

WSP's breach of contract claim is directed to Paragraph Three of the Agreement, in which defendant Marinello promised that he "will not directly or indirectly . . . use for himself . . . or disclose . . . any Confidential Information." Paragraph Three also required that, to the extent defendant Marinello possessed confidential information, he "shall promptly deliver" all such information to WSP. (Agreement ¶ 3.) As noted, the Agreement's definition of "Confidential Information" is broad, and encompasses "any data or information regarding the business of the Company that is not generally known to the public which has economic value, and what the company keeps confidential . . . ." (Agreement ¶ 4.) WSP contends that defendant Marinello has breached his obligations under Paragraph Three, and he continues to retain materials that include "business headcounts, headcount map and breakdown, organization chart by entity with names, positions salaries, bonuses, and other remunerations for fiscal years 2007 through 2012," as well as "business plans, IT due diligence documents, [and] IT meeting minutes

. . . ." (Compl't ¶¶ 29, 34(e), (g), 38-39.) The Complaint alleges upon information and belief that defendant Marinello has shared this information with his new employer. (Compl't ¶ 40.)

According to defendant Marinello, however, at the time of execution, the Agreement relieved him from any ongoing obligation to return confidential information. He cites to Paragraph Two, which states in full:

> **Consideration.** In consideration for signing this Agreement and complying with its terms, the Company agrees to pay to Employee the total amount of Twenty-Six Thousand Five Hundred Dollars and Zero Cents ($26,500), less lawful deductions, within 10 business days after the Company's receipt of an original of this Agreement signed by Employee.

(Agreement ¶ 2.) As characterized by defendant, "[t]he wording of this paragraph makes clear that [defendant's] signature and compliance with the terms of the Settlement Agreement were conditions that necessarily preceded in time Plaintiff's payment of the monetary consideration" to defendant. (Def. Mem. at 2.) Defendant Marinello also asserts that Paragraph Five of the agreement "makes certain" that WSP's payment to him was premised on past performance under the Agreement. That provision states:

> **No Consideration Absent Execution of This Agreement.** Employee understands and agrees that Employee would not receive the monies specified in Paragraph 2 above, except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

(Agreement ¶ 5.)

Neither Paragraph Two nor Paragraph Five relieved defendant Marinello of his express obligation to return any "Confidential Information" to WSP. Paragraph Two merely requires the defendant to adhere to the Agreement's terms, and Paragraph Five makes explicit that WSP's payment of consideration is made in exchange for defendant's performance. Paragraph Three, however, which governs defendant Marinello's obligations concerning

- 8 -

"Confidential Information," is written in the future tense, stating that he "<u>will</u> not" use or disclose such information and that he "<u>shall</u> promptly deliver" any such information to WSP. (Agreement ¶ 3; emphasis added.) The text of the Agreement expressly sets forth future and ongoing obligations concerning the defendant's handling of "Confidential Information," and his assertion that the Agreement required him to comply with this provision solely in advance of its execution, and not thereafter, is without merit.

The Complaint alleges specific items of information that WSP believes to be in defendant's possession, the timeframes in which they were accessed and asserts that these materials have not been returned. (Compl't ¶¶ 34(e), (g), 39.) While defendant Marinello may have accessed this information prior to execution of the Agreement, the Complaint alleges ongoing conduct that specifically violates Paragraph Three of the Agreement – namely, that he has retained WSP's "Confidential Information" and shared it with his new employer, Syska Hennessy. (Compl't ¶¶ 38-40.) The Complaint plausibly alleges that plaintiff has breached Paragraph Three of the Agreement.[1]

For the same reasons, the Complaint plausibly alleges that defendant Marinello has misappropriated trade secrets. Under New York law, "'[t]o establish a claim for

---

[1] WSP argues in its memorandum of law that, in the event the Court concludes that is has plausibly alleged a breach of contract claim, the remainder of the agreement should be deemed rescinded. Rescission is an "extraordinary" equitable remedy. Ellington v. Sony/ATV Music Publ'g LLC, 85 A.D.3d 438, 439 (1st Dep't 2011). "As a general rule, rescission of a contract is permitted 'for such a breach as substantially defeats its purpose. It is not permitted for a slight, casual, or technical breach, but . . . only for such as are material and willful, or, it not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract.'" RR Chester, LLC v. Arlington Bldg. Corp., 22 A.D.3d 652, 654 (2d Dep't 2005) (quoting Callanan v. Keeseville, Ausable Chasm & Lake Champlain R.R. Co., 199 N.Y. 268 (1910)). The Complaint includes no rescission claim. To the extent that plaintiff, for the first time, asserts a rescission claim in its motion papers, parties may not amend pleadings through statements in briefs. See, e.g., Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998). Separately, plaintiff's allegations that the alleged breach of Paragraph Three "had the effect of vitiating" the Agreement and "rendering it null and void in all respects," (Compl't ¶¶ 28-29, 41) is a legal conclusion not afforded the presumption of truth. Iqbal, 556 U.S. at 678. The Complaint makes no allegations as to the willfulness of the breach and does not detail how the breach was "so substantial and fundamental" that the breach defeated the object of the contract. RR Chester, 22 A.D.3d at 654. The Agreement sets forth other, additional consideration required by defendant Marinello, including a lengthy release provision in which Marinello agreed to release any possible claims directed toward WSP. (Agreement ¶ 6.) Plaintiff's rescission argument is therefore without merit.

misappropriation of trade secrets, a plaintiff must show that it possesses a trade secret, and that defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means.'" Novus Partners, Inc. v. Vainchenker, 32 Misc.3d 1241(A), at *6-7 (N.Y. Sup. Ct. N.Y. Cnty. 2011) (Fried, J.) (quoting Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd., 5 Misc.3d 285, 297 (N.Y. Sup. Ct. N.Y. Cnty. 2004)); see also Front, Inc. v. Khalil, 103 A.D.3d 481, 483 (1st Dep't 2013) (allegation that defendant forwarded plaintiff's confidential business information to competitors stated a claim for misappropriation of trade secrets). A trade secret is "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Ashland Mgt. Inc. v. Janien, 82 N.Y.2d 395, 407 (1993) (quotation marks omitted).

        The Complaint alleges that defendant Marinello continues to retain confidential information that he improperly obtained while employed at WSP, and that, after the Agreement's execution, he shared this information with his new employer, Syska Hennessy. (Compl't ¶¶ 34-36, 40, 45-47.) This information allegedly includes WSP's business plans. (Compl't ¶¶ 34, 46.) As with the breach of contract claim, this claim is directed toward alleged conduct that occurred after the Agreement's execution, specifically including the allegation made on information and belief that defendant has shared this information with his new employer. (Compl't ¶¶ 40, 46.) The claim is not premised merely on plaintiff's allegedly improper access of company information during his employment at WSP, but his subsequent and allegedly ongoing misuse of this information. As such, it is not barred by the Agreement's release provision.

Accepting the truth of these non-conclusory factual allegations, the Complaint plausibly alleges that defendant Marinello breached Paragraph Three of the Agreement, and that he has misappropriated trade secrets.

II.    The Complaint Plausibly Alleges Conversion.

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50 (2006). "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." Id. at 50. "[I]t is well settled that, where the original possession is lawful, a conversion does not occur until after a demand and refusal to return the property." D'Amico v. First Union Nat'l Bank, 285 A.D.2d 166, 172 (1st Dep't 2001).

WSP's conversion claim is based on defendant's alleged appropriation of electronics equipment that defendant took and retained during his employment at WSP. (Compl't ¶¶ 48-50.) A full list of items includes three phones, unlocked SIM cards, prepaid airtime of $200 per phone, a Toshiba laptop, a Lenovo laptop, an iPad, a cellular phone and a Samsung tablet. (Compl't ¶ 34(a), (d).) WSP demanded the return of these materials in a letter dated June 5, 2013, and defendant Marinello has never responded. (Compl't ¶¶ 35-36.)

Because "a conversion does not occur until after a demand and refusal to return the property," D'Amico, 285 A.D.2d at 172, plaintiff had no conversion claim until June 2013, when defendant allegedly refused plaintiff's demand. Defendant Marinello asserts that the release bars this claim because WSP could have discovered his possession of these materials prior to executing the release (Reply at 6-7), but in D'Amico, the First Department distinguished

discovery of a defendant's possession from the requirement of demand and refusal. 285 A.D.2d at 172-73. D'Amico concluded that possession is not hostile until a demand for return is refused. Id. Even though, as Marinello points out, WSP could have discovered defendant's retention of company electronics before execution of the Agreement, it had no conversion claim until defendant refused its demand of return. According to the Complaint, defendant Marinello has not responded to counsel's demand of June 5, 2013.

Because WSP conversion claim did not arise until defendant refused the demand to return company electronics, the claim is not barred by the release, and the motion to dismiss is denied.

### III. Plaintiff's Defamation Claim Is Dismissed.

#### A. The General Release Bars the Defamation Claim.

The Complaint quotes three statements that defendant Marinello allegedly posted to Twitter under the "WSP+Genivar" account. (Compl't ¶ 31.) Of the three statements, one was posted on February 26, 2013, and the other two were posted on February 28. (Compl't ¶ 31.) The Settlement Agreement was executed on February 28, 2013. The Complaint does not cite any allegedly defamatory statements made after February 28. Because the Complaint does not identify any statements that postdate the Agreement's execution, plaintiff's defamation claim is barred by the release.

#### B. In Addition, with One Exception, the Complaint Fails to Plausibly the Existence of Allegedly Defamatory Statements.

Separately, if it were not barred by the Agreement's release provision, WSP's defamation claim would be dismissed in part because it fails to set forth facts that plausibly allege defamation. "A claim for defamation must allege a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a

- 12 -

negligence standard, and it must either cause special harm or constitute defamation per se." O'Neill v. New York University, 97 A.D.3d 199, 212 (1st Dep't 2012) (quotation marks omitted). Statements of opinion are not actionable. Thomas H. v. Paul B., 18 N.Y.3d 580, 584 (2012). In determining whether a statement is a fact or opinion, courts weigh 1.) whether the defendant used words with a "precise meaning" that is "readily understood," 2.) whether the statement can be proved true or false, and 3.) whether the statement's "full context" or its "broader social context and surrounding circumstances" signal that the statement "is likely to be opinion, not fact." Id. The Second Department has observed that "readers give less credence" to "rhetorical hyperbole" and "vigorous epithet[s]" posted on the internet, and concluded that calling the member of a town board a "terrorist" constituted an opinion and not defamation per se. LeBlanc v. Skinner, 103 A.D.3d 202, 213 (2d Dep't 2012).

The Complaint identifies three allegedly defamatory statements: 1.) "WSP is a shareholder driven firm with little concern for design quality or client Services http://wspgroup.com"; 2.) "How do shareholders feel when they are investing in a company that has staff working for less than 2 Euros per day in unsanitary conditions"; and 3.) "Happy to be profiting from others misfortunes." (Compl't ¶ 31.) Of these statements, only the assertion that that WSP "has staff working for less than 2 Euros per day in unsanitary conditions" could plausibly give rise to a defamation claim. That assertion has a precise meaning, can be proved true or false, and, depending on context that is not apparent at the pleading stage, may plausibly be construed as a statement of fact and not opinion. Thomas H., 18 N.Y.3d at 584. The assertions that WSP is shareholder-driven and is happy to profit from misfortune are non-actionable opinion. See id.

Therefore, if plaintiff's defamation claim were not barred by the general release, it would be dismissed in part due to its failure to allege actionable statements of defamation.

IV. <u>The Accounting Claim Is Dismissed.</u>

"To be entitled to an equitable accounting, a claimant must demonstrate that he or she has no adequate remedy at law." <u>Unitel Telecard Distribution Corp. v. Nunez</u>, 90 A.D.3d 568, 569 (1st Dep't 2011). "The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." <u>Lawrence v. Kennedy</u>, 95 A.D.3d 955, 958 (2d Dep't 2012). An employee-employer relationship is insufficient to establish a fiduciary role. <u>Id.</u> at 958; accord <u>Berke v. Hamby</u>, 279 A.D.2d 491, 492 (2d Dep't 2001) (dismissing employee's accounting claim directed to corporate assets).

The Complaint sets forth no allegations that, if accepted as true, establish a fiduciary relationship between WSP and defendant Marinello, and instead alleges a typical employer-employee relationship. It also includes no allegations that could support a conclusion that WSP lacks adequate remedies at law, particularly given that its accounting claim is directed toward defendant's retention of electronics equipment and confidential information. (Compl't ¶ 54.) Plaintiff brings claims at law for this conduct, seeking $100,000 in money damages for each claim.

Because the Complaint has not alleged a fiduciary relationship with the defendant, and because it has not alleged that plaintiff has no adequate remedy at law, WSP's accounting claim is dismissed.

- 15 -

CONCLUSION

Defendant's motion to dismiss is GRANTED as to plaintiff's claims for defamation and accounting. It is denied in all other respects. The Clerk is directed to terminate the motion. (Docket # 9.)

The parties are directed to attend an Initial Pretrial Conference on January 16, 2014 at 11 a.m.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
December 18, 2013